BELL *et al.* v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, *Appellant.*

1. **Evidence :** HUSBAND, COMPETENCY AS WITNESS. A husband, who is a co-plaintiff with his wife in an action under Revised Statutes, section 2121, for the death of their son, is a competent witness on the trial of the cause.

2. **Contributory Negligence, Negligence of Defendant After Discovery of.** Although one who is struck and killed by a train while standing on a railroad track is guilty of contributory negligence in so being in a place of peril and danger, yet the railroad will still be liable for the accident if its engineer discovered the danger of the deceased, and, after such discovery, by the use of any means within his power consistent with the safety of the train, could have avoided the injury.

3. **Proximate Cause.** The failure of the engineer in such case to use the means possessed at the time and adequate to prevent the injury is the proximate cause of the accident.

4. **The pleadings in this case** held to raise the question of the railroad's negligence after becoming aware of the danger of the

deceased, and also, held that the evidence presented a proper question for the jury thereon.

### On re-hearing.

Upon a review and reconsideration of the whole case, held that the death of the deceased was occasioned directly and solely by his own gross carelessness in going and remaining upon the railroad track, without looking or listening for the approach of the train, and that there is no evidence in the record that the servants of defendant in charge of the engine and train could have avoided the injury after discovering the danger of the deceased, or that upon the discovery of his presence and peril upon the track they failed or omitted to use any means within their power to avoid and prevent the accident, and that, therefore, the demurrer to the evidence should have been sustained (Ray, J., dissenting).

*Appeal from Linn Circuit Court.*—Hon. G. D. Burgess, Judge.

Reversed.

*G. W. Easley* and *Smith & Krauthoff* for appellant.

(1) The plaintiff, Jno. A. Bell, being a party jointly and equally interested with his wife (R. S., 1879, sec. 2121), in the judgment, was, by the marital relation, disqualified from being a witness. This was undoubtedly true at common law. Best on Ev. (Chamberlayne's Ed.) 131, note b, 4; 2 Kent's Com. 179; 1 Greenleaf's Ev., sec. 334; 3 Bacon's Ab. Evidence A. 1; *Paul v. Leavitt,* 53 Mo. 595; *Haerle v. Kreihn,* 65 Mo. 205. The reason for the exclusion of husband and wife at common law, being social policy and not interest, statutes removing the disqualification arising from interest do not remove the disability arising from the marital relation. 1 Whart. on Ev., sec. 430; *Lucas v. Brooks,* 18 Wall. 452; *Kelly v. Drew,* 12 Allen 109; *In re David W. Jones,* 6 Bissell, 69; *Stanley v. Stanton,* 36 Ind. 445; *Hasbrook v. Vandervort,* 9 N. Y. 153; *Dawley v. Ayers,* 23 Cal. 108; *Gee v. Scott,* 48 Texas, 510; *Cram v. Cram,* 33 Vt. 15; *Mitchinson v. Cross,* 58 Ill. 366;

*Kelly v. Proctor*, 41 N. H. 139. (2) The deceased was guilty of the "grossest negligence beyond all dispute, a negligence difficult to be accounted for, assuming him to have been a young man ·of ordinary intelligence and without any defect of sight and hearing, and there is no proof that he was not." *Bell v. Hannibal, etc., Ry. Co.*, 72 Mo. 59. If the deceased had looked or listened he could have seen or heard the train and avoided the injury. That he did not do so is such contributory negligence as prevents a recovery; and the facts being undisputed there was nothing to submit to the jury, and defendant's demurrer to the evidence should have been sustained. *Powell v. Mo. Pacific Ry.*, 76 Mo. 80; *Lenix v. Ry. Co.*, 76 Mo. 86; *Baltimore, etc., Railroad v. State, etc.*, 65 Md. 648; 4 A. & E. R. R. Cas. 574; *Lake Shore, etc., Ry. Co. v. Hart*, 87 Ill. 529; s. c., 19 Am. Ry. Rep. 249; *Harlan v. St. Louis, K. C. & N. Ry. Co.*, 65 Mo. 22; 64 Mo. 480; *Railroad Company v. Huston*, 95 U. S. 697; *Stillson v. H. & St. Jo. Ry. Co.*, 67 Mo. 676; *Finlayson v. Ry. Co.*, 1 Dill. 579; *Fletcher v. Ry. Co.*, 64 Mo. 484; Field on Damages, p. 164, sec. 173; *Blaker's Exr'x v. Ry. Co.*, 18 Am. L. R. (N. S.) 562; *Salter v. Ry. Co.*, 75 N. Y. 273. "So it is held gross negligence for a person to stop on a railroad track at the usual time for the passage of a train, and allow his attention to be diverted in another direction from the cars until he is thrown from the track by a collision." Weeks' Dam. Abs. Inj. 243; *Ry. Co. v. Knowles*, 30 Conn. 313. (3) Plaintiff's sixth instruction is erroneous; it ignores Bell's contributory negligence and directs a verdict notwithstanding such negligence. The rule sought to be invoked by this sixth instruction, can have no application to a case like this where the negligence of the injured party continues up to and commingles with the negligent act of the defendant in producing the injury. *Cagney v. H. & St. Jo. Ry. Co.*, 69 Mo. 424; *Zimmerman v. H. & St. Jo. Ry Co.*, 71 Mo. 484; *O'Brien*

v. *McClinchey*, 68 Me. 552; Moak's Underhill on Torts, 283; *Murphy v. Dean*, 101 Mass. 466; Pierce on Railroad, 327; Big. Lea. Cas. on Torts, 725; *Nelson v. A. & P. Ry. Co.*, 68 Mo. 593; *Lucas v. New Bedford, etc., Ry. Co.*, 6 Gray, 64; *Waite v. North Eastern Ry. Co.*, 9 El. & Bl. 719; *O'Donnell v. Mo. Pacific Railroad*, 7 Mo. App. 190. (4) Contributory negligence is a complete defence to an action for a merely negligent injury. It is only when the injury sued for is alleged, in terms or substance, to have been wilfully committed, that contributory negligence ceases to be a defence. *Pa. Co. v. Sinclair*, 18 A. L. R. (N. S.) 378; *Terre Haute, etc., Railroad v. Graham*, 12 A. & E. Ry. Cas. 77. (5) The sixth instruction given for the plaintiff should have been refused because the pleadings did not raise the question of negligence after becoming aware of the danger in which the deceased was placed. *O'Donnell v. Mo. Pacific Ry.*, 7 Mo. App. 190; *Zimmerman v. Hannibal, etc., Ry. Co.*, 71 Mo. 484; *Duncan v. Fisher*, 18 Mo. 403; *Harris v. Railroad*, 37 Mo. 307; *Link v. Vaughn*, 17 Mo. 585; *Newham v. Kenton*, 79 Mo. 382. (5) There is no affirmative evidence of the want of care on the part of the engineer, after discovering Bell's danger, which caused the accident and there being no presumption of such want of care the instructions and verdict are without evidence to support them. *Baulec v. Railroad*, 59 N. Y. 356.

*S. P. Huston* and *A. W. Mullins* for respondents.

(1) Respondent, John A. Bell, was a competent witness. He is made so by our statute. R. S., sec. 4010; *Steffen v. Bauer*, 70 Mo. 399, 404–5; *Cooper v. Ord*, 60 Mo. 420; *Haerle v. Kreihn*, 65 Mo. 202, 205–6; *Fugate v. Pierce*, 49 Mo. 441; *Buck v. Ashbrook*, 51 Mo. 539; *Wood v. Broadley*, 76 Mo. 23; Schouler on H. & W. sec. 85. (2) The rule of law is well settled in this

court that if an injury results to a person on a railroad track by reason of such person being struck by a locomotive or train, caused by the negligence of the servants or employes of the railroad company in charge of the train, without concurring negligence on the part of the injured person, the railroad company is liable. And in case the injured person was negligent, or even a trespasser on the track, yet, if after discovering the danger and peril in which his negligence had placed him, or after a proper observance of their duties would have informed them of his peril, the employes in charge of the train fail to use ordinary care, skill and caution to prevent injury, and an injury thereby results, the railroad company is liable. *Morrissey v. Wiggins Ferry Co.*, 43 Mo. 380 ; *Brown v. H. & St. Joe Ry. Co.*, 50 Mo. 461 ; *Kennedy v. N. M. Ry. Co.*, 36 Mo. 351 ; *Burnham v. St. L. & I. M. Ry. Co.*, 56 Mo. 338 ; *Meyers v. C., R. I. & P. Ry. Co.*, 59 Mo. 223, 231 ; *Karle v. K. C., St. J. & C. B. Ry. Co.*, 55 Mo. 476 ; *Isabel v. H. & St. Joe Ry. Co.*, 60 Mo. 475 ; *Harlan v. St. L., K. C. & N. Ry. Co.*, 65 Mo. 22 ; *Bell v. H. & St. Joe Ry. Co.*, 72 Mo. 50. (3) The instructions given for the plaintiff are in precise accord with the very letter and spirit of the opinion of this court when the cause was here before. 72 Mo. 50. (4) The evidence was sufficient to require the submission of the case to the jury, and the court, therefore, did not err in refusing defendant's demurrer to the evidence. The train, as plainly appears from the evidence, was run at a reckless and very dangerous rate of speed, considering the time and place, when it came into the town, and this, too, without announcing its approach by the giving of any signals or ringing of the bell, aside from the station whistle half a mile from the town ; and that although the engineer came in sight of plaintiffs' son when at least six hundred feet from him, no alarm signal was even given nor the bell rung until the train had approached to within one hundred and sixty

to two hundred and twenty feet of him, and nothing whatever appears to have been done up to that time, nor subsequently until after the boy was struck and killed, to stop the train, put it under control, or slacken its speed, notwithstanding the engineer saw that the boy appeared to be, as he was, wholly unaware of the coming of the train. These facts and the attending circumstances tend to show the grossest negligence on the part of the engineer in the running and management of, or rather failure to manage his train, and his failure to duly notify or attempt to notify the deceased of the coming of the train, and his failure to duly resort to any of the ordinary means to try to avoid the calamity. *Pa. Railroad v. Lewis*, 79 Pa. St. 33; *C. & A. Ry. Co. v. Engle*, 84 Ill. 397; *Pryor v. Railroad*, 69 Mo. 215, 218; *Massoth v. Canal Company*, 64 N. Y. 524; Wharton on Negligence, sec. 388, and note 5 (2 Ed.); 1 Thompson on Negligence, p. 418, sec. 3, and cases cited in note 9; *Myer v. Railroad*, 2 Neb. 319; *Hagan v. Railroad*, 5 Phila. (Pa.) 179; *Hicks v. Railroad*, 64 Mo. 430; *McPheeters v. H. & St. Jo. Ry. Co.*, 45 Mo. 22, 24; *Frick v. Railroad*, 75 Mo. 595. (5) It is not the law that it is only when the injury sued for is alleged in terms or substance to have been wilfully committed that contributory negligence ceases to be a defence. *Hicks v. Railroad*, 64 Mo. 436; *Isabel v. Railroad*, 60 Mo. 480; *Maner v. Railroad*, 64 Mo. 267. (6) The pleadings in this case are the same as when it was here on a former appeal and the petition is sufficient to authorize the admission of plaintiffs' evidence and the giving of their instructions. *Mack v. Railroad*, 77 Mo. 232. (7) It was the duty of the engineer to keep a look out on the track. *Kelley v. Railroad*, 75 Mo. 140; *Frick v. Railroad*, 75 Mo. 595.

RAY, J.—This case has been once before in this court, and is reported in 72 Mo. 50. It was then re-

versed and remanded for erroneous rulings upon instructions, and upon a subsequent trial in the circuit court again resulted in a verdict and judgment for plaintiffs, from which defendant appealed. The statement of the case in the former decision was based in part upon evidence introduced by the defendant, especially that of the engineer; but the defendant introduced no evidence on the trial, now under review. With this modification and qualification we deem it unnecessary to make any further statement as to the general facts of the case, and the circumstances under which the boy was killed.

The main grounds relied upon for a reversal of the present judgment grew out of the admission of the plaintiff, Jno. A. Bell, as a witness in the cause; the contributory negligence of the boy and the action of the court in giving and refusing instructions in regard thereto, and especially its said action in giving for plaintiff the following instruction number six:

"6. The jury are instructed that if they believe from the evidence that the engineer in charge of the train saw that the boy did not notice the approaching train, nor hear the alarm whistle, it was his duty to use every means in his power, consistent with the safety of his train, to stop or slack up the speed of his train, so as to prevent injury to the boy, and if he failed to so stop, or slack up the train, when he could have done so, but ran upon and killed the boy, then the jury are bound to find the verdict in favor of the plaintiffs; even though they may believe that the boy may have been improperly on the track, and may have been negligent in standing there without keeping a lookout for an approaching train."

I. As to the competency of John A. Bell as a witness, as he is a party jointly and equally interested with his wife (who is his co-plaintiff) in the judgment (R. S., 1879, sec. 2121), it is contended that he is disqualified from testifying by virtue of said marital relation, and

that our statute (sec. 4010, R. S.) was only designed and intended to remove the disqualification of interest, and not that arising from the marital relation. This position is, at least, a plausible one, and the question presents, we think, some serious difficulties in its solution. Our conclusion, however, is against the view presented by appellant's counsel. The reason of the disqualification of husband and wife, at common law, was, we think, two-fold. Where they were offered for each other they were excluded on the ground of their identity of interest, and where they were offered as witnesses against each other they were likewise excluded, on the ground of public policy. *Fugate v. Pierce*, 49 Mo. 444; *Southwick v. Southwick*, 49 N. Y. 510. Blackstone places this prohibition under consideration upon the ground of interest, and also, upon the ground of the unity of the person. 1 Bl. Com. 443. But there are many authorities, and they are cited by appellant, which place it, either mainly, or solely, upon the ground of public policy ; and which fully sustain the appellant's positions. But in *Steffen v. Bauer*, 70 Mo. 399, 404, 405, which was a controversy over land, the title to which was in the wife, Steffen, the plaintiff, and the husband, was offered as a witness, to show that his wife signed the deed under compulsion, and acknowledged the same while he was present. The objection that he was incompetent because he was the husband was made, and in the circuit court he was allowed to testify upon the issues affecting his interest alone, but was excluded upon the issue challenging the trust deed, which issue was supposed to chiefly affect the wife's interest. After noticing the abolishment, by our statute, of several rules of evidence established by common law and the frequent difficulty of our determining the extent thereof, and declaring that Steffen, husband and plaintiff, was clearly competent, as to his own interests, the court, through Napton, J., then say : " It is obvious * * * that he

had an interest in the issue as well as his wife, since in the event of her death he would be tenant by the curtesy, and, also had an interest in his wife's land during coverture. * * * The husband, therefore, cannot testify for the wife, on this issue concerning the validity of the trust deed without also testifying for himself, to the extent of his interest. It strikes me, therefore, that the distinction taken by the circuit court * * * is not authorized under our statutes as they now stand."

And in the present case, the husband and plaintiff, John A. Bell, testifies in his own behalf, and, at the same time, testifies necessarily in his wife's behalf. He is not a nominal or technical party to the record. He is, equally with his wife, the meritorious cause of action, and had a like beneficial interest with her in the judgment, conferred upon them jointly by the statute. He was, we think, a competent witness under the law as it now stands, and this construction has been adopted, acquiesced in, and recognized in numerous decisions by this court, and is the one which best accords, we think, with the obvious intent and purpose of our statutes. *Fugate v. Pierce, supra; Steffen v. Bauer*, 70 Mo. 404; *Cooper v. Orr*, 60 Mo. 420; *Haerle v. Kreihn*, 65 Mo. 202; *Buck v. Ashbrook*, 51 Mo. 539; *Joice v. Branson*, 73 Mo. 29; *Wood v. Broadley*, 76 Mo. 23. The statute may be said to be an expression, and there are many such in our law, civil and criminal, of a modern public policy, changing and abrogating the common law rules of evidence in many and important particulars, and advancing public justice and convenience by allowing and admitting relevant evidence heretofore incompetent, and leaving its credibility and value to be passed upon, and determined as a fact.

II. As to the court's ruling upon instructions, it is conceded that those given for the plaintiff are, for the most part, the same as upon the former trial, and this is

further seen and shown by a comparison of the same, as set out in the record, and those set out in the report of the case in 72 Mo. 50. The second omits the word unskillfulness, whose use therein was criticised by this court in its former opinion. In the former decision of the case, instruction numbered seven in the report thereof was declared correct, if the words "by any means in his power" had been qualified by adding "consistent with the safety of the train." Instruction now numbered six contains the words and qualification thus suggested, and is, in all other respects, substantially the same as said instruction formerly numbered seven. But it is now urged against the propriety of said instruction that it ignores Athen Bell's contributory negligence, and directs a verdict for plaintiff, notwithstanding the same, and that it announces a rule that can have no application to a case like this, where the negligence of the injured party, in the language of counsel, "continues up to and commingles with the negligent act of the defendant in producing the injury," and this view is put by counsel in many ways, and a great number of authorities are cited in support thereof. The conduct of young Bell, upon the occasion in question, in going upon the railroad track, when and where he did, and in failing to keep a lookout for passing trains, was, we think, grossly careless and negligent, and such it was held and denominated in the former decision of this case. While this is so, yet, if it is also true that, after the engineer discovered the boy upon the track, under the perilous circumstances stated in the instruction, he could, by the use of every means in his power consistent with the safety of the train, have avoided the injury to the boy, then the defendant is liable, whatever may have been the boy's antecedent negligence in going upon the railroad, or in being there at the time. On this state of facts, the instruction might properly authorize a verdict, for the doctrine of contributory negligence, is then, we think,

wholly inapplicable, and it does not then exist as a defence.

The boy's negligence does not, in that event, as counsel argues, "continue up to, commingle and cooperate with the defendant's negligence in producing the result." It has ceased to operate, whenever the engineer discovers his peril and has present ability to prevent the injury. These new elements of time, opportunity, and ability to render the boy's negligence harmless, create the duty to do so, and where the power to do this exists, and a 'failure to employ it occurs, then the injury is, in legal contemplation, to be attributed thereto, and although the boy's negligence may have existed, and may have been present at the time, yet it is not then present as a cause of the injury, or as actively contributing thereto, for the injury could have then been avoided, notwithstanding such negligence. This failure to use the means possessed at the time, and adequate to prevent the injury, is, we think, what the books and authorities denominate, in that event, the direct and proximate cause of an injury, and the boy's negligence is, under the state of facts supposed, an extinct and inactive and inoperative agency or condition in the transaction. If these views of the law are correct, and there was evidence to show the existence of the facts, as submitted, then it follows that the instruction was proper and the giving thereof was not erroneous.

Assuming that the engineer was at his post, and observant of the track, as it was his duty to be, when running his train at such a rate of speed through the station at the town of Meadville, and without intending to stop thereat, the evidence shows that the boy could have been seen by the engineer for the distance of two hundred yards, and perhaps farther. In the absence of his testimony, the exact time when he did, in fact, see the boy on the track, his distance from the engine, and

the means thereafter used by him, if any, to avoid the injury, must be learned, if at all, from the plaintiffs' witnesses, and the admitted and necessary facts, circumstances and surroundings attending the transaction. That the engineer was aware of the boy's presence upon the track and of his thoughtless condition at the time, or, at least, of his dangerous situation, is plainly shown, or may, at least, be plainly inferred from the fact that the alarm whistle was sounded by him, which was done at a distance from the boy of one hundred and sixty or two hundred feet. The opportunity and ability of the engineer to prevent the injury, and the exertions, if any were made to do so, were, under the circumstances of this case, matters for the consideration and determination of the jury. In the former opinion in this case Napton, J., speaking for the court, says, "the evidence shows, that everything was done by the engineer, when he ascertained that Athen Bell did not move at the alarm whistle, except to reverse the engine, and the question is, whether the engineer, in simply applying the air brakes, and not reversing the engine, is to be regarded as justified by the circumstances, on the ground that he acted on his judgment which, whether right or wrong, had to be formed instantaneously."

The jury did not have the benefit of the engineer's evidence upon this trial, as to whether or not he reversed the engine and applied the brakes, or as to how promptly he gave the signal, and used, if at all, the means and appliances under his control to prevent the injury, or of his explanation as to why he did not, if he failed to do so, but there was, we think, evidence by plaintiffs' witnesses, who were bystanders at the station and passengers on the train, and facts and circumstances from which they could find or infer that the engine was not reversed, or the speed slackened until the boy was struck, and that all the means of stopping the train and avoiding the injury were not used, as promptly, at least,

as they might and should have been, under the circum-
stances. There was, we think, evidence of the facts
submitted in said sixth instruction, and it was for the
jury to give it such weight and value as they might
think proper. The further objection to said instruction,
that the pleadings did not raise the question of negli-
gence after becoming aware of the danger in which the
deceased was placed, is not, we think, well taken. It is
raised, for the first time, in this court.

The action was brought under the second section of
the damage act, for the death of the son, caused by the
negligence and carelessness of defendant's agents and
servants in running, conducting and managing the train
and in failing to give signals of its approach. The
second amended answer was a general denial of the
allegations of the petition and charged contributory
negligence on the part of Athen Bell, and alleges further
as follows: "That defendant, by its agents and em-
ployes, conducting, managing and running said engine
and train, had the same under full control, and exercised
reasonable care and diligence in the management thereof,
before, and at the time of Athen Bell's getting struck,
as aforesaid, in order to prevent the same, and they
could not, by the exercise of reasonable care and dili-
gence, prevent striking and injuring him, as alleged in
said petition."

That question, then, was, we think, raised by these
pleadings and was, we think, necessarily involved in the
issues thus made, and, further, it is evident that this was
the theory of the defendant, in the trial below, as shown
by instructions numbered two, three and four, given at
his instance and in his behalf. The remaining criticisms
of counsel upon the other instructions in this case, are,
we think, without substance and merit. The instruc-
tions, four in number, given on the part of the defend-
ant, with those given for the plaintiff, fairly presented
the questions at issue to the jury. We see no error in

the court's action thereon, or in the record, and we, therefore, affirm the judgment.

## On re-hearing.

KAY, J.—This cause has been re-argued and upon a reconsideration of the whole case my associates are of opinion that the death of the boy was occasioned directly and solely by his gross carelessness in going and remaining upon the railroad track without looking or listening for the approach of the train, and that there is no evidence in the record that the servants or employes of defendant in charge of the engine and train could have avoided the injury, after discovering the perilous position of the boy ; or that upon the discovery of his presence and peril upon the railroad track they failed or omitted to use any of the means in their power to avoid and prevent the accident. They, therefore, hold that the instruction, in the nature of a demurrer to the evidence, asked by defendant at the close of plaintiffs' evidence, should have been given. This conclusion leads to a reversal of the judgment of the circuit court, which is ordered accordingly. I am unable to concur in this view and estimate of the evidence and, therefore, dissent from the above result and disposition of the case. I adhere to the views heretofore expressed in the original opinion in this cause.